*431 OPINION OF THE COURT
Millard L. Midonick, J.
This is a motion to dismiss an amended petition filed in a pending accounting proceeding. The amended petition states two causes of action seeking damages in the amount of $20,-000 (less disbursements of up to $3,000) from the movant arising out of his allegedly negligent performance of his duties as an attorney in connection with the settlement of the contested probate of this decedent’s will. There are four petitioners: two are hospitals and were the movant’s clients in the probate contest; the other two petitioners were parties to the settlement as persons interested in the estate but were not the movant’s clients. They are the decedent’s separated wife and the trustee of a preresiduary trust. The question raised by this motion is the scope of the movant’s liability for negligence to persons with whom he had no privity of contract.
The background facts here begin with a 1967 separation agreement between the decedent and his wife (who is, as indicated, one of the four petitioners) in which he undertook to execute a will creating a $325,000 trust to pay her $12,000 a year from income or, if income was insufficient therefor, from principal. After her death the remaining principal and any accumulated income were to be paid to the two hospitals who are copetitioners. The trustee of this trust is the fourth petitioner.
In 1968, the decedent executed a will creating a preresiduary trust which complied with the separation agreement. The residue of his estate was bequeathed to the same two hospitals. In 1972, he executed a new will which contained the same preresiduary trust, but the residue under this will was bequeathed to his nephew. At this time he also created a substantial inter vivas trust which significantly reduced his testamentary estate. The beneficiary of the inter vivas trust was the said nephew.
Allegedly at the suggestion of the petitioner Faherty, who is the trustee of the aforesaid preresiduary trust, and who is a member of the New Jersey Bar, the hospital petitioners retained the movant to contest the 1972 will under which the nephew was substituted for them as residuary beneficiary. They signed a contingent retainer agreement under which the movant’s fee was to be based on any recovery obtained for the hospitals in excess of their interest in the preresiduary trust which was, of course, the same under both wills. In the event *432 his services were not productive, he was to receive only disbursements not in excess of j $3,000.
The contested probate proceeding was resolved by a court approved compromise under which the hospitals received $30,000 from the assets of the inter vivas trust and the movant received $20,000 as his legal fee paid from the assets of the estate as an expense of administration. It is alleged that the movant negligently failed to obtain sufficiently detailed information with regard to the size of the estate which would have indicated that the residue was insufficient to fund the preresiduary trust in full after paying administration expenses and the taxes allocable! to it. The result of this insufficiency was that the movant’s fee as well as the fee of counsel for the executor was in effect paid out of the preresiduary trust corpus. Instead, the movant informed the hospitals that their preresiduary trust was intact. On the basis of that advice the hospitals consented! to the settlement. The trustee Faherty and the widow also consented to the settlement after having been informed by the hospitals that the movant had advised them that the preresiduary trust was not impaired. It was the movant who forwarded to the trustee Faherty and the forms of consent to the settlement, which they widow the executed.
The executor’s accounting reveals that the principal on hand for funding the residuary trust is in excess of $259,000 which, of course, falls short of the $325,000 required for this trust. The gross estate received by the executor exceeded $400,000 but was reduced by the estate taxes of approximately $30,000, a payment for perpetual care in excess of $11,000, the fees of the executor’s attorneys in excess of $50,000 and the movant’s fee of $20,000. An application by the petitioners to set aside the probate compromise and for the return of legal fees was settled with the exception of the issues raised by the amended petition.
The first cause of action in the amended petition is for unjust enrichment and seeks judgment of $20,000 less the indicated disbursements solely in favor of the petitioner hospitals. As to this cause of action, the present motion to dismiss, which is grounded solely on the absence of privity, must be denied.
The second cause of action is a claim by all four petitioners that they were damaged by tlje movant’s negligent misrepresentations to the hospitals that the preresiduary trust would *433 not be impaired by the settlement, which he made with the knowledge that the hospitals would transmit this information to the trustee Faherty and the widow. Here again, so much of the second cause of action as relates to the claim by the hospitals is obviously immune to this motion.
The issue of the liability of an attorney to third persons not in privity for alleged negligence in performing his legal services to his client may well be, as argued by the petitioners, the subject of a changing legal trend in New York. During the last 20 years the California courts have led a reversal of the traditional precept that a lawyer’s liability for negligence is circumscribed by privity (Lucas v Hamm, 56 Cal 2d 583; see Restatement, Torts 2d, § 552; Note, Negligence — Third Party Beneficiary Liability of Attorney to Beneficiaries of a Will, 30 Fordham L Rev 369; Ann. 45 ALR3d 1181). The New York cases continued to adhere to the privity requirement. (See Joffe v Rubenstein, 24 AD2d 752; Matter of Cook, 102 Misc 2d 691; Victor v Goldman, 74 Misc 2d 685, affd 43 AD2d 1021.) That approach may, however, be in the process of changing. In Schwartz v Greenñeld, Stein, Weisinger (90 Misc 2d 882) the attorney for the borrower in a secured loan transaction undertook to file the security agreement for the lender. When the borrower went bankrupt, it appeared that the attorney had negligently failed to file the agreement. In the suit by the lender against the attorney for damages, due to the loss of the protection sought to be afforded by the security agreement, the court overruled the attorney’s claim that he was not liable to the lender for lack of privity, quoting the rationale of the California cases and the ALR annotation cited above. Of course, in the Schwartz case (supra), as the court pointed out, the attorney undertook the duty to the third party personally, which is a closer relationship than is alleged in the instant case.
More significantly, the Court of Appeals in White v Guarente (43 NY2d 356) expressly extended the liability of accountants beyond privity, distinguishing the case which is generally regarded as the keystone of the privity requirement, Ultramares Corp. v Touche (255 NY 170). The continued importance of this issue is reflected in the familiar sentence in Chief Judge Cardozo’s opinion in the Ultramares case (p 180): "The assault upon the citadel of privity is proceeding in these days apace.” There the court held that accountants were not liable, for ordinary negligence in preparing an audited balance *434 sheet, to persons with whom! they were not in privity, although the exhibit of the balance sheet to persons like the plaintiff, who was a factor, was certainly foreseeable albeit not specifically known by the defendant. The court indicated that the presence of gross negligence could permit the jury to infer fraud in which case there would be liability without privity.
Certainly some of the factors relied upon for the determination in White v Guarente (supra) are present here. In holding an accountant liable to the limited partners for a defective audit furnished to a partnership which did not reveal that the general partners had withdrawn $2,000,000 of their $2,600,000 capital investment based on back-dated notices, avoiding six months of losses prior to actual withdrawal, the court pointed out that the services in question "were not extended to a faceless or unresolved class of |persons, but rather to a known group possessed of vested righjts, marked by a definable limit and made up of certain components (see Ultramares Corp. v Touche, 255 NY 170, 182-185, supra).” (White v Guarente, supra, p 361.) There is no specter of unlimited liability in the case at hand, nor of claims in devastating number and amount, since the movant was clearly aware of the need to have the widow and the trustee participate in the compromise and that the hospitals would pass his advice along to them. (Prosser, Torts [4th ed], p 708.)
However, in this court’s opimon, any decision extending an attorney’s liability to third parties should be based on public policy involving the balancing of relevant considerations. Thus in White v Guarente (supra, pp 361-362) the court said: "Here, accountant Andersen was retained to perform an audit and prepare the tax returns of Associates, known to be a limited partnership, and the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in the fixed, definable and contemplated group whose conduct was to be governed, since, given the contract and the relation, the duty is ’ imposed by law and it is not necessary to state the duty in terms of contract or privity (cf. Glanzer v Shepard, 233 NY 236, 239; see, also, Scholen v *435 Guaranty Trust Co. of N. Y., 288 NY 249, 253; 1 Harper and James, Torts, § 7.6, p 546).” Even the pioneer California cases turn on a balancing of policy considerations and a case-by-case analysis: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury, and the policy of preventing future harm.” (Lucas v Hamm, 56 Cal 2d 583, 588, supra; see, also, Ann., 45 ALR3d 1181, 1186.)
The balancing of such considerations in this case does not justify a deviation from the traditional rule limiting an attorney’s liability for negligent misrepresentations to his clients. The widow seems unaffected in practical terms by the attorney’s behavior here since her right to $12,000, payable out of income or principal, appears to be adequately protected despite the reduced funding of the trust. It is not clear what damage the trustee Faherty can be asserting dehors that of the widow who is the trust income beneficiary and of the hospitals who are the remaindermen. In addition, he is not only a trustee but a lawyer. The court can see no impelling reason to expand the movant’s liability for his benefit.
Accordingly, the motion to dismiss as much of the second cause as represents a claim by the widow and the trustee Faherty is granted.