David A. MOROWITZ et al., Appellants,

v.

Jeffrey MARVEL, Appellee.

No. 79–677.

District of Columbia Court of Appeals.

Argued Sept. 10, 1980.

Decided Nov. 5, 1980.

---

Morris Kletzkin, Washington, D.C., for appellants.

Walter J. Smith, Jr., Washington, D.C., for appellee.

Before NEWMAN, Chief Judge, and KERN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellants are before this court seeking reversal of an order dismissing their amended complaint which alleged in three counts: abuse of process, malicious prosecution, and professional negligence. We are urged to review and revise the law in this jurisdiction regarding a physician's cause of action against attorneys who institute seemingly frivolous medical malpractice actions. Having reviewed the record before us, we conclude the trial court did not commit error in dismissing the amended complaint. We therefore affirm.

I

The facts are undisputed. On or about May 18, 1976, appellants, who are practicing physicians, brought a small claims suit against a patient for monies owing for medical services rendered. On June 23, 1976, counsel retained by the patient asserted a counterclaim alleging medical malpractice and professional negligence in the rendition of the services for which appellants sought payment. The counterclaim demanded a jury trial and prayed for $30,-000 in damages.

A default judgment was entered against the patient in the small claims action. The counterclaim was certified to the Civil Division of the Superior Court and thereafter was withdrawn. This action followed.

II

It is axiomatic that the American system of jurisprudence favors free access to the courts as a medium of dispute settlement. It is the announced policy of this jurisdiction to allow unfettered access to our courts. In an effort to avoid infringing upon the right of the public to utilize our

courts, we are cautious not to adopt rules which will have a chilling and inhibitory effect on would–be litigants of justiciable issues. We are likewise cognizant of our obligations to protect the innocent against frivolous litigation and to make victims of groundless lawsuits whole where they suffer special injury as the result of the suit. Predictably, our decisions have evolved in response to these competing interests.

## MALICIOUS PROSECUTION

In *Ammerman v. Newman*, D.C.App., 384 A.2d 637 (1978), this court reviewed the law of this jurisdiction with respect to proceedings asserting malicious prosecution and, aware that the majority of the states have now rejected a special injury requirement, nonetheless opted to affirm our requirement of the same, in the belief that it best promotes this jurisdiction's policy of encouraging free access to the courts.

Thus, we reiterated that to prevail in a claim of malicious prosecution, plaintiff must plead and prove four things: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action. *Id.*

■ In the case at bar, appellants do not allege special injury. The injuries appellants complain of are those which "might normally be incident to the service of process on anyone involved in a legal suit." *Nolan v. Allstate Home Equipment Co.,* D.C.Mun.App., 149 A.2d 426, 430 (1959). The complaint indicates that the injuries occasioned, if any, are costs incident to any litigation and "professional defamatory–type" damages. Such injury is not actionable in a malicious prosecution claim. *See Martin v. Trevino*, 578 S.W.2d 763 (Tex.Civ. App.1978), where on similar facts the Texas court found that the injury alleged did not constitute special injury.

We conclude that with respect to the count alleging malicious prosecution, the court did not err in finding that appellant failed to state a claim upon which relief could be granted.

## ABUSE OF PROCESS

■ This jurisdiction has also articulated a test for determining when a cause of action for abuse of process will lie. In *Jacobson v. Thrifty Paper Boxes, Inc.*, D.C. App., 230 A.2d 710, 711 (1967), we stated the inquiry thusly:

[W]hether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do. [*Id.* (citing 1 Am.Jur.2d *Abuse of Process* § 4 (1962)).]

The critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable. "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance." *Hall v. Hollywood Credit Clothing Company*, D.C. Mun.App., 147 A.2d 866, 868 (1959).[1] Thus, in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge. *Id.* at 868. *Accord, Geier v. Jordan*, D.C. Mun.App., 107 A.2d 440 (1954); *Hall v. Field Enterprises, Inc.*, D.C.Mun.App., 94 A.2d 479, 480 (1953).

■ In the instant case, appellee merely filed a counterclaim and subsequently withdrew it. Without more, appellants' proffer that appellee filed the counterclaim with the ulterior motive of coercing settlement, is deficient. There is no showing that the process was, in fact, used to accomplish an

---

1. We are mindful, however, that Super.Ct. Civ.R. 11 mandates that:

The signature of an attorney [on a pleading] constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay.

end not regularly or legally obtainable. *See Nolan v. Allstate Home Equipment Co.,* *supra* at 430. *See also, Martin v. Trevino,* *supra* at 769.

Under these circumstances, we cannot find that the trial court erred in dismissing this count of appellants' amended complaint.

## PROFESSIONAL NEGLIGENCE

■ As an alternative ground of recovery, appellants urge that they have a cause of action against appellees for professional negligence. This court has not squarely addressed this issue before, but we are satisfied from a review of the cases in other jurisdictions that such an action cannot lie. Each jurisdiction which has concluded, as we do, that a negligence action will not lie by a former defendant against adverse counsel, has done so primarily for the reason that there is an absence of privity of contract between counsel and an opposing party and for public policy reasons.

Historically, there has been a strict application of the privity of contract rule. Thus, in a landmark case, *National Savings Bank of the District of Columbia v. Ward,* 100 U.S. 195, 25 L.Ed. 621 (1879), the Supreme Court held that the doctrine of privity of contract barred suit by a bank against adverse counsel who were professionally negligent in conducting title examinations, despite the fact that the attorneys' neglect clearly occasioned the bank's loss.

Exception was first made to this stringent requirement of privity in cases involving fraud or collusion. Later, courts began relaxing the requirement of privity in cases involving the drafting of wills and the examination of titles.[2] In these instances, the courts relaxed the requirement on the basis that the plaintiffs were direct and intended beneficiaries of the attorney's services. The mere fact that the third party was a foreseeable plaintiff was not, however, sufficient to give rise to a legal duty to the third parties.[3]

In recent years courts which have considered whether a negligence action should lie on facts similar to those before us have overwhelmingly resolved this question in the negative. Decisions in California, Illinois, and New York are illustrative of this view. Unanimously, they have not permitted an adverse party to recover from an opposing counsel on a negligence theory.

California has declined to allow third parties to bring negligence actions against adverse counsel for at least three reasons: (1) an absence of privity of contract; (2) an adverse party is not an intended beneficiary of adverse counsel's services; and (3) policy reasons. *Goodman v. Kennedy,* 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737 (1976); *Norton v. Hines,* 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975). In *Goodman v. Kennedy, supra,* the court stated:

> To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self–protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom the client might deal would prevent him from devoting his entire energies to his client's interests. The result would be both an undue burden on the profession and a diminution in the quality of the legal services received by the client. [*Id.* at 344, 134 Cal.Rptr. at 381, 556 P.2d at 743 (citations and footnote omitted).]

Illinois rejected the notion of a negligence action by third parties against adverse counsel on the grounds that: (1) it would be contrary to public policy to impose upon an attorney a duty to an intended defendant not to file seemingly frivolous lawsuits; (2) to allow the same would cre-

---

**2.** Birnbaum, *Physicians Counter Attack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions,* Fordham L. Rev. 1003, 1071–72 (1977).

**3.** *Id.* at 1072.

ate an "insurmountable conflict of interest between the attorney and client," *Berlin v. Nathan*, 64 Ill.App.3d 940, 953, 381 N.E.2d 1367, 1376 (1978); and (3) establishment of such a negligence cause of action would inhibit free access to the courts. *Pantone v. Demos*, 59 Ill.App.3d 328, 335, 375 N.E.2d 480, 485 (1978); *accord, Lyddon v. Shaw*, 56 Ill.App.3d 815, 822, 372 N.E.2d 685, 690 (1978).

New York has held fast to the traditional view that since an attorney has no privity of contract with adverse parties in a litigation, absent fraud or collusion, no negligence action will lie. *Victor v. Goldman*, 74 Misc.2d 685, 344 N.Y.S.2d 672 (1973), *aff'd mem.*, 43 A.D.2d 1021, 351 N.Y.S.2d 956 (1974); *Maneri v. Amodeo*, 38 Misc.2d 190, 238 N.Y.S.2d 302 (1963). Further, it has declined to permit third parties to bring negligence actions against adverse counsel because it found that "to hold an attorney personally responsible for instituting a frivolous action on behalf of a client would operate to discourage free resort to the courts for the resolution of controversies, contrary to public policy." *Drago v. Buonagurio*, 89 Misc.2d 171, 173, 391 N.Y.S.2d 61, 63 (1977), *rev'd*, 61 A.D.2d 282, 402 N.Y.S.2d 250 (1978), *original order reinstated, mem.*, 46 N.Y.2d 778, 386 N.E.2d 821, 413 N.Y.S.2d 910 (1978).

For the reasons enumerated, we are satisfied that an action for professional negligence cannot lie under these circumstances.

Finding no error, we

*Affirm.*[4]

---

4. There are other avenues of redress available to physicians who are the victims of seemingly frivolous medical malpractice actions. If used properly, an administrative proceeding brought by the local bar disciplinary counsel, based on a violation of professional standards of conduct, can be an effective deterrent to instituting frivolous medical malpractice claims.